IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARLIN BRANDT POHLMAN,

                Plaintiff,                    3:14-cv-1483-PK

v.                                     OPINION AND
                                     ORDER

KEVIN HORMANN, COLLETT PETERS,
R. LADEBY, C. COLEMAN,
W. BAYSINGER, C. OLSON, C. DIGULIO,
D. FUZI, J. SMITH,

                Defendants.

---

PAPAK, Magistrate Judge:

       Plaintiff *pro se* Marlin Brandt Pohlman filed this action on September 17, 2014 against

defendants Kevin Hormann, Colette Peters, R. Ladeby, C. Coleman, W. Baysinger, C. Olson, C.

1 - OPINION AND ORDER

DiGulio, D. Fuzi, and J. Smith. By and through his complaint, Pohlman alleges the liability of each defendant under 42 U.S.C. § 1983 for violations of his First, Fifth, Eighth, and Fourteenth Amendment rights. This court has federal-question jurisdiction over Pohlman's claims pursuant to 28 U.S.C. § 1331.

Now before the court is Defendants' motion for partial summary judgment (#60) as to Pohlman's claims against defendants Hormann, Peters, Ladeby, Coleman, Baysinger, and Olson. Defendants move on the grounds that plaintiff has failed to exhaust his administrative remedies for all but two of the claims in his complaint. I have considered the motion and all of the briefings, papers, and pleadings on file. For the reasons set forth below, Defendants' motion is granted in part and denied in part, and Pohlman's claims against defendants Hormann, Peters, Ladeby, Coleman, Baysinger, and Olson are dismissed.

## FACTUAL BACKGROUND

### I.    The Parties

Plaintiff Pohlman is an incarcerated person and has been in the custody of the Oregon Department of Corrections ("ODOC") since October 17, 2013. Declaration (#61) of Marian Geils ("Geils Decl."), ¶ 3. Pohlman was housed at the Deer Ridge Correctional Institution ("DRCI") from April 25, 2014 to August 12, 2014, and at the Snake River Correctional Institution ("SRCI") beginning on August 12, 2014.[1] *Id.*, Att. 1.

Defendant Kevin Hormann is the Assistant Superintendent of Security at DRCI. Defendant Peters is the Director of ODOC. Defendant Ladeby is the Food Services Manager at

---

[1]Pohlman's housing dates at DRCI are elsewhere noted as April 24, 2014 to July 1, 2014. Geils Decl., ¶ 3. However, those dates appear to be incorrect based on ODOC's record of Pohlman's housing history, and documentation of Pohlman's grievances. *See* Geils Decl., Att. 1.

DRCI. Defendant Coleman is the Inmate Work Program Coordinator at DRCI. Defendant Baysinger is a Correctional Counselor at SRCI. Defendant Olson is the Corrections Food Services Coordinator at DRCI. Defendant DiGulio is a physician at DRCI. Defendant Fuzi is the Medical Services Manager at DRCI. Defendant Smith is a Correctional Officer at DRCI.

## II.    Facts Underlying the Parties' Dispute[2]

Pohlman's complaints arise from an injury he sustained on April 24, 2014 while in transport from Eastern Oregon Correctional Institution to DRCI.[3] Declaration (#69) of Marlin Brandt Pohlman ("Pohlman Decl."), ¶ 1. In his initial complaint, Pohlman raises several claims concerning his treatment after the injury. Complaint, #2, 5-7. Defendants concede that Plaintiff fully exhausted the grievance process for his claims with respect to defendants Smith, DiGulio, and Fuzi, involving failure to obtain medical treatment and denial of a low bunk and work restriction. Defendants' Motion (#60) for Partial Summary Judgment ("Defendants' Motion"), 2. Those claims are not at issue in Defendants' motion for partial summary judgment, and therefore I will not address the facts pertaining to those claims here.

### A.    ADA Accommodation

On July 25, 2014, Pohlman filed a grievance concerning defendant Olson's threatening and intimidating communication to him in the DRCI Kitchen, and requesting ADA

---

[2]Except where otherwise indicated, the following recitation constitutes my construal of the evidentiary record in light of the legal standard governing motions for summary judgment under Federal Civil Procedure Rule 56.

[3]Both Pohlman and Defendants refer to the date of Pohlman's injury as April 24, 2014, though some of Pohlman's grievances refer to April 25, 2014 as the date of injury. *E.g.*, Geils Decl., Att. 4 at 2; Att. 5 at 4.

3 - OPINION AND ORDER

accommodation for his kitchen work assignment. Geils Decl., ¶ 16; Att. 5 at 18; Att. 6 at 1.[4]

DRCI staff responded on August 5, 2014. Geils Decl., Att. 6 at 3.

Pohlman appealed the response on August 6, 2014, but did not include all of the documentation required. Geils Decl., Att. 6 at 4, 5. The DRCI grievance coordinator nonetheless accepted the appeal on August 11, 2014 and notified Pohlman that additional information was needed to proceed. *Id.*, Att. 6 at 5.

Pohlman was transferred to SRCI on August 12, 2014. Geils Decl., ¶ 17; Pohlman Decl., ¶ 28.

On August 13, 2014, Pohlman sent the original grievance and grievance response to the DRCI grievance coordinator. Geils Decl., Att. 6 at 9. The DRCI grievance coordinator received the necessary additional documentation on August 19, 2014, and Pohlman's appeal proceeded. *Id.*, Att. 6 at 6.

Pohlman initiated this litigation on September 17, 2014. Complaint, #2.

On October 8, 2014, DRCI Superintendent Tim Causey responded to Pohlman's appeal. Geils Decl., Att.6 at 11. Pohlman did not appeal the first level appeal response. *Id.* ¶ 18.

**B.    Transfer to SRCI**

On August 15, 2014, Pohlman filed a grievance alleging that he was transported from DRCI to SRCI as "a reprisal" for reporting his transport injury and seeking treatment and ADA

---

[4]The Pohlman Declaration (#69) includes many of the same attachments as the Geils Declaration (#61), but the numbering is either illegible or non-sequential, so I refer to the Geils Declaration for clarity and consistent numbering.

4 - OPINION AND ORDER

accommodation.[5]  Geils Decl., Att. 7 at 2-3.

The SRCI grievance coordinator received the grievance on August 20, 2014, but it was "delayed while [sic] tried to resolve w/ inmate." Geils Decl., ¶ 22; Att. 7 at 2-3.  The delay occurred because Pohlman sent an inmate communication on August 14, 2014 to Eastside Institutions Administrator Steve Franke asking why he had been transferred. Geils Decl., ¶ 23; Att. 7 at 4.  Franke responded to the letter on August 27, 2014.  Geils Decl., Att. 7 at 5.

The DRCI grievance coordinator received a copy of the grievance on October 2, 2014. Geils Decl., Att. 7 at 2-3.  After the DRCI grievance coordinator confirmed that the handwritten note regarding the delay was from the SRCI grievance coordinator, she "restarted the grievance process." *Id.* ¶ 24.

The grievance was "referred out" for a response on October 21, 2014, but no response was provided.  Geils Decl., ¶ 25; Att. 7 at 6, 7.

On December 2, 2014, Pohlman was informed that ODOC could not respond to his grievance due to his litigation filed on September 17, 2014.  Geils Decl., Att. 7 at 8.

## III.   Grievance Procedures at ODOC

Pohlman has at all material times been housed at either DRCI or SRCI.  Pohlman had

---

[5]Pohlman states that this grievance was his "third good faith effort to continue the DRCM 2014-07-026 sequence," which grieved denial of ADA accommodations.  Pohlman Decl., ¶ 35. Pohlman details his difficulties in obtaining a grievance appeal form at SRCI, and effort to continue the appeal using a primary grievance form instead. *Id.* ¶¶ 29-35.  However, upon review of the grievance form, I find that the grievance Pohlman filed on August 15, 2014 constituted a new grievance.  Geils Decl., Att. 7 at 2-3.  The DRCI grievance coordinator accepted Pohlman's first appeal of DRCM 2014-07-026 on August 11, 2014. *Id.*, Att. 6 at 5. That appeal was still pending on August 15, 2014 when Pohlman first grieved his transfer from DRCI to SRCI. *Id.*, Att. 6 at 6; Att. 7 at 2-3.

available to him a three-level grievance procedure consistent with the regulations set forth in

Chapter 291, Division 109 of the Oregon Administrative Rules ("OARs").

Pursuant to the DRCI and SRCI grievance procedures and applicable Oregon

Administrative Rules, "[i]f an inmate is unable to resolve an issue through informal

communications, [the] inmate may seek resolution of the issue by submitting a written grievance

using the department's approved inmate grievance form (CD 117)." OAR-291-109-0140(1)(a).

Any such grievance "must include a complete description of the incident, action, or application

of the rule being grieved, including date and approximate time," and should be accompanied by

any referenced documents. OAR-291-109-0140(1)(b). Matters, actions, and incidents that an

inmate may properly grieve are the "misapplication of any administrative directive or operational

procedure," the "lack of an administrative directive or operational procedure," any

"unprofessional behavior or action which may be directed toward an inmate by an employee or

volunteer of [ODOC] or the Oregon Corrections Enterprises," any "oversight or error affecting an

inmate," any "program failure as defined in . . . OAR-291-077-0020," except where such failure

was caused by the inmate's misconduct, or the "loss or destruction of [the inmate's] property. . . ."

OAR-291-109-0140(2). "An inmate grievance may request review of just one matter, action or

incident per inmate grievance form." OAR-291-109-0140(1)(d). Similarly, inmates are not

permitted to grieve the actions of more than one ODOC employee through a single grievance

form, but rather must file one grievance form per ODOC employee whose actions are the subject

of the inmate's challenge. *See* OAR-291-109-0140(5). In addition, inmates are not permitted to

grieve any "[c]laims or issues the inmate has pursued or is pursuing in pending litigation in state

or federal courts." OAR-291-109-0140(3)(h). A grievance will not be processed unless it is received by the applicable grievance coordinator on form CD 117 "within 30 calendar days of the date of the incident giving rise to the grievance." OAR-291-109-0150(2).

Upon receipt of an inmate grievance, a grievance coordinator is required to "assign the grievance a number, date stamp, and record its receipt in an inmate grievance log" and to "send a grievance receipt to the inmate." OAR-291-109-0160(1) and (1)(a). The grievance coordinator is then required to coordinate with the ODOC employee best suited to respond to the grievance, and to send the inmate's grievance to that person "for reply." OAR-291-109-0160(1)(b). The response must "be returned to the grievance coordinator for processing within 21 calendar days." OAR-291-109-0160(1)(c). Following such processing, the grievance coordinator is required to send the inmate copies of both the grievance and the response, and to retain copies for the grievance coordinator's files, all within "45 days from the date the grievance was received" by the grievance coordinator, "unless further investigation is necessary." OAR-291-109-0160(2). In the event the grievance coordinator fails to complete processing of the grievance within 45 days of its receipt, "the grievance coordinator will make an effort to notify the inmate of the status of the grievance." *Id.* "If the inmate does not receive a response within the allotted time frame, he/she may contact the grievance coordinator." *Id.*

"If at any time the grievance coordinator determines the inmate has pursued his/her grievance through state or federal courts . . . the grievance process will cease and the grievance will be returned to the inmate." OAR-291-109-0160(4). "A grievance that has been returned to [an] inmate by the grievance coordinator for procedural reasons cannot be appealed."

7 - OPINION AND ORDER

OAR-291-109- 0160(5).

An inmate may appeal the institutional response to the inmate's grievance by and through "the grievance appeal form (CD 117c)." OAR-291-109-0170(1)(a). Any such appeal "must be submitted to the grievance coordinator together with the original grievance, attachments, and staff response(s)." *Id.* The scope of the originally submitted grievance cannot be expanded on appeal, and the inmate is not permitted to add new information regarding the grieved incident on appeal, except where such information was unavailable to the inmate at the time the original grievance was filed. *See id.* Any such appeal must be received by the grievance coordinator "within 14 days from the date that the grievance response was sent to the inmate from the grievance coordinator." OAR-291-109-0170(1)(b). The grievance coordinator is required to send the appeal to the "functional unit manager," who is required to respond to the appeal "within 30 calendar days." OAR-291-109-0170(1)(a)(B) and (1)(d). The grievance coordinator is then required to send the functional unit manager's appeal response to the inmate. *See* OAR-291-109-0170(2)(c).

In the event an inmate wishes to appeal the functional unit manager's decision regarding a grievance appeal, the inmate may do so "using the grievance appeal form (CD 117c)." OAR-291-109-0170(2)(a). Any such appeal "must be submitted to the grievance coordinator together with the original grievance, attachments, staff responses, and documentation related to the first grievance appeal." *Id.* The grievance coordinator must receive any such appeal "within 14 calendar days from the date that the first grievance appeal response was sent to the inmate from the grievance coordinator." OAR-291-109-0170(2)(c). As with the first appeal, appeal of the functional unit manager's response cannot expand the scope of the original grievance, and

8 - OPINION AND ORDER

cannot adduce new information regarding the originally grieved incident, except where such information was unavailable to the inmate at the time the original grievance or first appeal was filed. *See* OAR-291-109-0170(2)(a). The grievance coordinator is required to forward any such appeal to "the Assistant Director having authority to review and resolve the issue." *Id.*

The Assistant Director with such authority is required to respond to any such appeal from a functional unit manager's grievance appeal response "within 30 calendar days." OAR-291-109-0170(2)(e). "The Assistant Director's . . . decision on an inmate's grievance appeal is final, and is not subject to further [administrative] review." OAR-291-109- 0170(2)(f).

### LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not proper if material factual issues exist for trial. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g.*, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–55 (1990).

# ANALYSIS

Pohlman brings several First, Fifth, Eighth, and Fourteenth Amendment claims under Section 1983, which are premised on (1) the denial of Pohlman's request for ADA accommodation, and (2) claims that his transfer from DRCI to SRCI on August 12, 2014 was retaliatory. For the purposes of the analysis that follows, I construe these claims separately.

## I.    Prison Litigation Reform Act

Under the Prison Litigation Reform Act ("PLRA"), incarcerated plaintiffs are required to exhaust all administrative remedies available to them within the institutions in which they are housed before bringing any federal action in connection with prison conditions, including such actions brought under 42 U.S.C. § 1983:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). For purposes of the PLRA, actions brought with respect to "prison conditions" include all actions brought to challenge isolated episodes of unconstitutional or otherwise unlawful misconduct of any kind as well as prisoner petitions challenging conditions of confinement. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Under the PLRA, the courts lack discretion to consider claims challenging prison conditions, including claims for money damages, except where such claims are filed following complete exhaustion of available administrative remedies, without regard to the nature of the administrative remedies available under such administrative grievance procedures. *See id.* at 524, *citing Booth v. Churner*, 532 U.S. 731, 739, 740 n.5, 741 (2001).

Inmates are not required to plead or demonstrate exhaustion before bringing prison-conditions lawsuits. *Jones v. Bock*, 549 U.S. 199, 216 (2007). To the contrary, an incarcerated plaintiff's failure to satisfy the PLRA exhaustion requirement is an affirmative defense that is the burden of the defendant in a prison-conditions lawsuit to raise and prove. *See id.* Following the Ninth Circuit's *en banc* decision in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014), the courts of the Ninth Circuit treat challenges to a prisoner's exhaustion of administrative remedies as motions for summary judgment if premised on proffered evidence, and as motions to dismiss for failure to state a claim if premised on the incarcerated plaintiff's pleading alone. *See Albino*, 747 F.3d at 1166. Here, Defendants have properly brought an evidence-based challenge to Pohlman's exhaustion of administrative remedies as a motion for partial summary judgment.

"If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* However, "[i]f material facts are disputed, summary judgment should be denied, and [following such denial] the district judge rather than a jury should determine the facts." *Id.* The *Albino* court specified that the court should act as the finder of fact in connection with an exhaustion challenge "in a preliminary proceeding," *id.* at 1168, "if feasible, before reaching the merits of a prisoner's claim," *id.* at 1170. Such preliminary proceeding is to be conducted "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," *id.*, which is to say via a plenary evidentiary hearing to be conducted in a manner within the discretion of the court, *see, e.g., Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285, 1285 n. 2 (9th Cir. 1977).

For purposes of the PLRA, "complete exhaustion" of available administrative remedies

11 - OPINION AND ORDER

requires that an inmate "complete the administrative review process in accordance with [all] applicable procedural rules, including deadlines . . . ." *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009), *quoting Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Indeed, as the Supreme Court established in *Woodford*, "proper exhaustion of administrative remedies . . . 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 90 (emphasis original), *quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). The *Woodford* court reasoned that to hold otherwise would permit prisoners to render the PLRA exhaustion requirement "wholly ineffective" by defaulting in the performance of administrative requirements and then claiming exhaustion by virtue of such procedural default. *Id.* at 95. Under *Woodford*, only proper exhaustion of administrative requirements, including compliance with deadlines and performance of all procedural requisites, is sufficient to satisfy the requirements of the PLRA. *See id.* at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . .").

### 1.    Claims Alleging Denial of ADA Accommodation

As noted above, on July 25, 2014, Pohlman filed a grievance requesting ADA accommodation, to which he received a response on August 5, 2014. Also as noted above, Pohlman filed a first appeal on August 6, 2014, but did not provide all of the necessary documentation. The DRCI grievance coordinator nonetheless accepted the appeal on August 11, 2014, and received the additional information from Pohlman on August 19, 2014. DRCI Superintendent Tom Causey responded to Pohlman's appeal on October 8, 2014, after Pohlman initiated this litigation. Pohlman did not appeal the response. Because Pohlman failed to fully exhaust the administrative process with respect to his ADA accommodation claims, this court

lacks discretion to consider the merits of those claims.

Pohlman contends that he made two attempts to continue the appeal process for his ADA accommodation grievance before finally resorting to using a primary grievance form. Pl.'s Response, 11-12. That grievance was labeled as the beginning of a new grievance sequence, rather than a continuation of Pohlman's ADA accommodation grievance. Pohlman Decl., ¶¶ 30, 33, 35; Pl.'s Response, 14. Pohlman asserts that prison employees "exercise control over the labeling, numbering, grouping and association of grievances and appeals which may be exerted to render a remedy unavailable." Sur-Response to Motion for Partial Summary Judgment, #71, 7. Pohlman also argues that the confiscation of his grievance paperwork during transfer to SRCI, and failure of ODOC officials to respond to his grievances within the time required under the OARs obstructed his pursuit of administrative exhaustion. Pl.'s Response, 10-11, 15-16.

Once the defendant proves there was an available administrative remedy that the prisoner failed to exhaust, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). Under the OARs, the functional unit manager has 30 days from the date he or she receives a grievance appeal to return the grievance appeal and response to the grievance coordinator. OAR-291-109-0170(1)(d). In *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005), the Ninth Circuit agreed with other circuits in "'refus[ing] to interpret the PLRA so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.'" 422 F.2d at 943 n.18, *citing Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). In *Brown*, inmate Hall filed a federal action less than two months after prison

officials notified him that an investigation into his complaint was pending.  422 F.3d at 933.

Though the court stated that "delay in responding to a grievance, particularly a time-sensitive

one, may demonstrate that no administrative process is in fact available," they failed to find that

Hall "was prejudiced by the long time it took to conclude the investigation into his staff

complaint."  *Id.* at 943 n.18.

Pohlman's first level appeal was still pending when he was transferred to SRCI and when

he filed this action.  Geils Decl., Att. 6 at 5, 6.  Pohlman's appeal was accepted on August 11,

2014.  *Id.*, Att. 6 at 5.  Though Pohlman's prior grievance paperwork was confiscated when he

was transferred to SRCI on August 12, 2014, Pohlman was able to send the DRCI grievance

coordinator the additional documents necessary to continue his appeal on August 13, 2014.  *Id.*,

Att. 6 at 9.  There is no evidence that the processing of that appeal was affected by prison

officials labeling his first retaliatory transfer grievance as a new grievance sequence.  On August

19, 2014, Pohlman received notice that his first level appeal was proceeding.  *Id.*, Att. 6 at 6.

Without receiving a response to his appeal, Pohlman filed this action less than 30 days later, on

September 17, 2014.  Complaint, #2.  Pohlman's pursuit of administrative exhaustion was not

obstructed with respect to his ADA accommodation claims.  Rather, Pohlman successfully filed a

first grievance appeal, which was pending when he commenced this action.

Additionally, any arguable delay in the appeal process did not render Pohlman's

administrative remedies effectively unavailable.  If the appeal response time tolled from when

Pohlman's additional paperwork was received on August 19, 2014, then as of September 17,

2014, when Pohlman brought this action, there was no delay under the OARs.  If the time tolled

from August 11, 2014, then as of September 17, 2014, 37 days had elapsed without a response.

14 - OPINION AND ORDER

Based on the grievance process rules, it is not clear that prison officials were required to send Pohlman a response within 30 days. The rules only state that the functional unit manager must provide the *grievance coordinator* with an appeal response within 30 days.

Even assuming arguendo that the response to Pohlman's grievance appeal was indeed delayed as of September 17, 2014, Pohlman was not prejudiced by the delay. Pohlman waited only a week after the 30 days had tolled before bringing this action, though he was on notice of a potential delay when the DRCI grievance coordinator informed him that additional documentation was necessary to continue with his appeal. There is no evidence that the third level of the grievance process was unavailable to Pohlman or that Pohlman attempted to continue the grievance process when his first appeal was delayed by seven days. Pohlman therefore still had unexhausted remedies available to him when he brought this action.

Based on the foregoing analysis, I find that Pohlman did not exhaust his administrative remedies with respect to his ADA accommodation claims, and this court therefore lacks discretion to consider the merits of those claims.

### 2.    Transfer to SRCI

As noted above, Pohlman filed a grievance alleging that his transfer from DRCI to SRCI was "a reprisal" for reporting his transport injury and seeking ADA accommodation. Geils Decl., Att. 7 at 2-3. Also as noted above, the SRCI grievance coordinator received the initial grievance on August 20, 2014, but the process was delayed . Geils Decl., ¶¶ 22, 23; Att. 7 at 2-3. The DRCI grievance coordinator received a copy of the grievance on October 2, 2014 and "restarted the grievance process." Geils Decl., ¶ 24; Att. 7 at 2-3. The grievance was "referred out" for a response on October 21, 2014, but no response was provided. Geils Decl., ¶ 25; Att. 7 at 6, 7.

15 - OPINION AND ORDER

On December 2, 2014, Pohlman was informed that ODOC could not respond to his grievance due to his litigation filed on September 17, 2014. Geils Decl., Att. 7 at 8.

Pohlman argues that threats of retaliation for filing a grievance excuse exhaustion. Pl.'s Response, 18. He contends that the administrative remedies available to him are inadequate to address grievances about acts of retaliation that were intended to obstruct the use of those same remedies. *Id*. at 19. Pohlman offers *Gibson v. Berryhill*, 411 U.S. 564 (1973) and *Wray v. Or. Dep't of Corr.*, No. 2:12–CV–00980–PK, 2013 WL 3479477 (D. Or. July 8, 2013) as support for these contentions.

However, Pohlman misstates the authority. In *Gibson*, the Supreme Court found that exhaustion of administrative remedies generally is not required in suits challenging the adequacy of the available administrative remedies. 411 U.S. at 574-575, 575 n.14. In *Wray*, however, based on the broad scope of the PLRA exhaustion requirement, this court declined to extend the *Gibson* rule to challenges to the adequacy of prison grievance procedures. 2013 WL 3479477 at *12. Based on *Wray*, exhaustion of Pohlman's retaliatory transfer claim is not excused.

Pohlman failed to exhaust his available administrative remedies with respect to his retaliatory transfer claim. The SRCI grievance coordinator received Pohlman's initial grievance on August 20, 2014. Geils Decl., ¶ 24; Att. 7 at 2-3. The grievance coordinator had 45 days from that date to process the grievance. OAR-291-109-0160(2)(a). Without receiving a response, Pohlman commenced this action on September 17, 2014, only 28 days after the SRCI grievance coordinator received his initial grievance, and before the DRCI grievance coordinator even received his initial grievance. Pohlman did not wait for a response to his initial grievance, contact the SRCI or DRCI grievance coordinator for an update (*see* OAR-291-109-0160(2)(b)),

16 - OPINION AND ORDER

or file an appeal. Pohlman had several remaining administrative remedies available to him when he brought this action.

Based on the foregoing analysis, I find that Pohlman did not exhaust his administrative remedies with respect to his retaliatory transfer claims, and this court therefore lacks discretion to consider the merits of those claims

### 3.    Summary

In consequence of the foregoing analysis, under the PLRA this court lacks discretion to consider the merits of Pohlman's ADA accommodation and retaliatory transfer claims against defendants Hormann, Peters, Ladeby, Coleman, Baysinger, and Olson. Defendants are entitled to partial summary judgment in connection with those claims, and they are dismissed with prejudice.

## II.    Pohlman's Proposed Amended Complaint

Defendants move for summary judgment notwithstanding Pohlman's proposed amended complaint, which attempts to include new defendants and claims in this proceeding. Defendants' Motion, 5-6. To support this, Defendants cite *Thunderbird v. ODOC*, 2011 WL 2971796 (D. Or. June 28, 2011), a case decided by this court that stands for the proposition that a claim is "brought" for the purposes of the PLRA when a plaintiff submits his complaint. Accordingly, Defendants seek summary judgment on claims introduced in the proposed amended complaint that postdate Pohlman's initial complaint.

The Ninth Circuit has drawn a distinction between an amended complaint introducing new claims arising after the filing of the initial complaint and one that solely involves claims predating the filing of the initial complaint. *See Rhodes v. Robinson*, 621 F.3d 1002 (9th Cir.

17 - OPINION AND ORDER

2010). In the former situation, the amended complaint is considered a "supplemental complaint" and exhaustion of new claims need only occur before filing the supplemental complaint. *Id.* at 1006-1007.

Therefore, Defendants' motion is denied in part to the extent Pohlman's proposed amended complaint introduces new claims that arose after the initial complaint was filed. Claims 5 and 6, respectively involving a November 2014 misconduct report and inadequate medical care in 2015, survive Defendants' motion. Motion (#37) for Leave to File Amended Complaint ("Proposed Amended Complaint"), 23; Defendants' Motion, 5. Those claims merely supplement the initial complaint and do not, on their face, violate the PLRA. *See Rhodes*, 621 F.3d at 1007. However, Defendants' motion is granted in part insofar as the amended complaint involves new claims or new facts in support of claims predating the filing of the initial complaint, including but not limited to those items related to Pohlman's initial transport injury, Defendants' denial of ADA accommodation, and Pohlman's transfer to SRCI, contained in Claims 1, 3, and 4 and the related facts. Proposed Amended Complaint, #37-1, 12-13, 15-20. Those aspects of the Proposed Amended Complaint (#37-1) must be stricken and Pohlman is granted leave to re-file his Proposed Amended Complaint in conformity with this Order.

## CONCLUSION

For the reasons set forth above, Defendants' motion for partial summary judgment (#60) is granted in part and denied in part. Summary judgment is entered in favor of defendants Hormann, Peters, Ladeby, Coleman, Baysinger, and Olson as to Pohlman's ADA accommodation and retaliatory transfer claims. Those claims are dismissed with prejudice and those defendants are dismissed from this action.

Further, Defendants' motion for summary judgment against all new claims introduced in Pohlman's Proposed Amended Complaint (#37-1) is denied in part as it applies to Claims 5 and 6, arising after September 17, 2014, the date Pohlman filed his initial complaint. Defendants' motion is granted in part as it applies to Claims 1, 3, and 4, predating September 17, 2014, and Pohlman must strike the portions of his Proposed Amended Complaint (#37-1) related to those claims. Thus, Pohlman is granted leave to re-file his Proposed Amended Complaint (#37-1) in accordance with this Order as follows:

- Claim 1 regarding original transport injury in April 2014 must be stricken;

- Claim 2 against Smith, Fuzi, DiGulio, and (proposed defendant) Carter **SURVIVES**;

- Claim 3 regarding Pohlman's ADA accommodation claim must be stricken;

- Claim 4 regarding Pohlman's retaliatory transfer claim must be stricken;

- Claim 5 against (proposed defendants) Richardson, Landaverde, Clements, Capps, and Nooth **SURVIVES**; and

- Claim 6 against (proposed defendant) State of Oregon **SURVIVES**.

Further, Pohlman's Motion for Leave to File an Amended Complaint, as modified by this Order, (#37) is granted. Finally, the stay as to Pohlman's Motions to Compel (#38), (#56), (#57), (#63) & (#64); and Motions to Add Supplemental Parties and Motions for Joinder (#52) & (#53) is lifted. In addition, the stay of discovery and pending deadlines is lifted. Discovery and motions may proceed on Pohlman's remaining claims.

Dated this 4th day of August, 2015.

Honorable Paul Papak
United States Magistrate Judge

19 - OPINION AND ORDER